UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**COLETTE B.,**

    **Plaintiff,**

v.

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

Case No. 2:20-cv-9500
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Colette B. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.   PROCEDURAL HISTORY**

On March 15, 2017, Plaintiff filed an application for benefits, alleging that she has been disabled since July 21, 2016. R. 108, 137, 211–12. That application was denied initially and

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

upon reconsideration. R. 138–43, 152–54. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 155. Administrative Law Judge ("ALJ") Scott Tirrell held a hearing on June 28, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 62–107. In a decision dated September 26, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 21, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 42–55. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 10, 2020. R. 21–26. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 22, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[2] On February 23, 2021, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

>factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account

whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 44 years old on her alleged disability onset. R. 53. She met the insured status requirements of the Social Security Act through December 31, 2021. R. 44. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 21, 2016, her alleged disability onset date, and the date of the decision. R. *Id*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease with radiculopathy, status-post surgery; tranchanteric bursitis of the right hip; insulin dependent diabetes mellitus ("IDDM") with peripheral neuropathy and gastroparesis; diabetic macula edema; nonproliferative diabetic retinopathy; combined senile cataract; vitreous floaters; and headaches. *Id*.  The ALJ also found that the following medically determinable impairments were not severe: hypertension, anemia, Barrett's esophagus, chronic constipation, hiatal hernia, gastroparesis syndrome,[3] viral gastroenteritis with systemic inflammatory response syndrome, and benign pituitary neoplasm with optic nerve compression. R. 45. The ALJ further found that Plaintiff's alleged chronic pain syndrome, urinary tract infection, and depression were not severe impairments. R. 45–46.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 46–47.

---

[3] The Court notes but does not further address in this Opinion and Order the ALJ's inconsistent finding of gastroparesis as both a severe and a non-severe impairment.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 47–53. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a certified nurse's assistant and child monitor. R. 53.

At step five, the ALJ found that a significant number of jobs–*i.e.*, approximately 40,415 jobs as a document preparer; approximately 12,556 jobs as an order clerk; approximately 21,999 jobs as a charge account clerk–existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 54. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 21, 2016, her alleged disability onset date, through the date of the ALJ's decision. R. 55.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the decision of the Acting Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 15; *Plaintiff's Reply Brief*, ECF No. 19. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 18.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

Prashant Patel, M.D., Plaintiff's treating pain management provider, completed an undated, six-page, check-the-box, and fill-in-the-blank form entitled, "Physical Residual Functional Capacity Questionnaire." R. 1305–10. Dr. Patel indicated that he had treated Plaintiff on a monthly basis for pain management since April 6, 2018. R. 1305. Dr. Patel diagnosed

lumbago and lumbar radiculitis and opined that Plaintiff's prognosis was fair. *Id*. Plaintiff's symptoms were low back and right leg pain, which Dr. Patel characterized as "constant, aching" with a severe intensity that cannot be alleviated and which is made worse by standing and walking. *Id*. Clinical findings and objective signs included positive straight leg raising on the right. R. 1306. Plaintiff's treatment included medication and intermittent pain management procedures, such as lumbar epidural injections. *Id*. According to Dr. Patel, Plaintiff's impairments had lasted or could be expected to last at least twelve months. *Id*. Dr. Patel denied that Plaintiff was a malingerer and commented that emotional factors do not contribute to the severity of Plaintiff's symptoms and functional limitations. *Id*. According to Dr. Patel, Plaintiff's impairments were reasonably consistent with the symptoms and functions described in the doctor's evaluation. *Id*. Dr. Patel opined that Plaintiff's experience of pain or other symptoms were severe enough to interfere with attention and concentration, *id.*, and that Plaintiff was incapable of even low stress jobs because of the severity of her pain. R. 1307. According to Dr. Patel, Plaintiff could walk one to two city blocks without resting or experiencing severe pain. *Id*. Plaintiff could sit or stand for fifteen minutes before needing to get up or before needing to sit down or walk around. *Id*. Plaintiff could stand/walk for a total of less than two hours in an eight-hour work day. *Id*. Plaintiff would require a job that permitted changing positions at will from sitting, standing, or walking. R. 1308. Plaintiff would also need three or four fifteen-minute unscheduled breaks per day. *Id*. Plaintiff also needed a cane while engaging in occasional standing or walking. *Id*. According to Dr. Patel, Plaintiff could rarely (defined as 1% to 5% of an eight-hour work day) lift and carry less than ten pounds in a competitive work situation and could never twist, stoop (bend), crouch, climb ladders, or climb stairs. R. 1308–09. Plaintiff's impairments were likely to produce "good days" and "bad days" and she was likely to be absent

9

from work more than four days per month as a result of her impairments or treatment. R. 1309.

## V. DISCUSSION

Plaintiff raises several challenges to the ALJ's decision, including, *inter alia*, that the ALJ erred when weighing the opinions of Patel, Plaintiff's treating pain management provider. *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 15–19. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter,* 642 F.2d at 705).

For claims filed before March 27, 2017,[4] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight,

---

[4] As previously noted, Plaintiff's claim was filed on March 15, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any

especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still

---

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

At step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to certain additional limitations as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant can *occasionally climb* ramps and *stairs*; never climb ladders, ropes, or scaffolds; and *occasionally* balance*, stoop,* kneel*, crouch*, and crawl. The claimant can never work at unprotected heights or work with exposed machinery. The claimant can never drive an automobile at night, or operate heavy equipment at night. *The claimant would require one to two minutes of standing at the workstation after 30 minutes of sitting, and would require one to two minutes of sitting at the workstation after 30 minutes of standing or walking*, during which periods the claimant would be off task in addition to usual breaks. The claimant would require the use of a cane with the dominant hand for standing and walking. Further, the claimant can understand, remember, and carry out simple instructions; can perform simple, routine tasks; can make simple work-related decisions; is *able to adapt to changes in routine work settings*; and can respond appropriately to supervision, coworkers, and usual work situations.

R. 47 (emphasis added). In reaching this determination, the ALJ, *inter alia*, assigned "some weight" to Dr. Patel's opinions, reasoning as follows:

> The opinions of the claimant's pain management provider Prashant Patel, M.D. are afforded some weight. Dr. Patel opined that the claimant is incapable of even low stress work, could walk one to two blocks, sit for 15 minutes, stand for 15 minutes, and stand or walk for a combination of less than two hours, would need three to four unscheduled breaks during the work day, requires the use of a cane, could never perform climbing, stooping, or crouching, could rarely lift and/or carry less than ten pounds, and would be absent for days per month (Ex. 30F). Although Dr. Patel is the claimant's treating provider, specializing in pain management, the overall record does not fully support Dr. Patel's limitations to the extent opined. To the extent supported by the overall record, limitations such as limitation to sedentary work, postural limitations, and limitation to simple, routine work, have been incorporated into the above residual functional capacity finding.

R. 52.

Plaintiff disagrees with the ALJ's finding that "overall record does not fully support" Dr. Patel's opinions. *Plaintiff's Memorandum of Law*, ECF No. 15, p. 18. Plaintiff also argues that the regulatory factors for weighing medical opinions required that the ALJ assign greater weight–if not controlling weight–to Dr. Patel's opinions because, as a treating physician, he personally examined Plaintiff, 20 C.F.R. § 404.1527(c)(1), he was a treating specialist who provided a "longitudinal picture" of Plaintiff's condition, *id.* at § 404.1527(c)(2)(i)−(ii), and his specialty put him in the best position to opine as the nature of and the extent to which Plaintiff's impairments limited her ability to function, *id.* at § 404.1527(c)(5). *Plaintiff's Memorandum of Law*, ECF No. 15, pp. 18−19.  In response, the Commissioner notes that the ALJ discounted–but did not reject outright–Dr. Patel's opinions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 18, p. 9. The Commissioner then defends the ALJ's consideration of Dr. Patel's opinions in a single sentence that simply restates the ALJ's findings: "The ALJ correctly noted that those limitations [found by Dr. Patel] that found support in the record were included in the

13

RFC – sedentary work with postural and other non-exertional limitations (Tr. 52) but that additional restrictions were not warranted." *Id*.

The Commissioner's argument is not well taken. Although the ALJ discounted Dr. Patel's opinions because "the overall record does not fully support Dr. Patel's limitations to the extent opined[,]" R. 52, the ALJ does not cite to specific contrary record evidence. *See id*. Nor is it clear from the ALJ's recitation of the evidence at step four how the record undermines Dr. Patel's opined limitations. For example, although the ALJ pointed to an improvement in Plaintiff's condition following steroid injections, R. 49, the evidence cited in support of that observation related to only a period of approximately one year, between early 2016 and early 2017, *i.e.*, before Dr. Patel began treating Plaintiff in April 2018. R. 49, 1282. Similarly, the ALJ's assessment of other opinion evidence does not demonstrate why the record "does not fully support Dr. Patel's limitations[.]" R. 52. For instance, the ALJ assigned "some weight" to the opinions of state agency reviewing physicians who found that Plaintiff was capable of light work because they had program knowledge and reviewed available evidence, but the ALJ also noted that "these examiners did not examine the claimant and the overall record supports greater limitations, such as a limitation to exertionally sedentary work, and to simple, routine tasks, as incorporated into the above residual functional capacity[.]" *Id*. The ALJ also assigned "some weight" and "little weight," respectively, to the opinions of Plaintiff's surgeon and spine specialist, Louis G. Quartararo, M.D., and primary care provider, Elfie Wegner, A.P.N., whose opinions regarding Plaintiff's limitations of function were similar to those articulated by Dr. Patel. R. 52.[5] Although an ALJ is free to determine whether and to what extent a treating

---

[5] The ALJ considered the opinions of Dr. Quartararo and Nurse Wegner as follows:

physician's opinions should be credited, the ALJ cannot reject evidence from a treating physician "for no reason[.]" *Morales*, 225 F.3d at 317 (citation and internal quotation marks omitted); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence."). Here, because the ALJ's recitation of the evidence and assessment of opinion evidence does not clearly explain his finding that "the overall record does not fully support . . . [Dr. Patel's] limitations to the extent opined," R. 52, the Court cannot meaningfully review that finding. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *Hardy v.*

---

> The claimant's surgeon Dr. Quartararo opined in September 2017 that for six to eight weeks, the claimant should avoid heavy lifting, meaning no frequent lifting over ten pounds or more than a maximum of 30 pounds, and should further avoid bending and stooping. He also opined that the claimant should not squat, kneel, or climb, and should avoid prolonged bed rest (Ex. 24F, p. 17). I afford this opinion some weight, since Dr. Quartararo was the claimant's treating surgeon; however, his assessed limitations were expressly temporary in nature, are not well supported by his contemporaneous musculoskeletal exam results (Ex. 24F, p. 17), and are not entirely consistent with the remainder of the diagnostic and clinical findings of record for the remainder of the period at issue. Accordingly, some weight has been given to Dr. Quartararo's opinion.
>
> I afford the opinions of the claimant's treating primary care provider, Ms. Wegner, little weight. Ms. Wegner opined that the claimant could sit less than two hours total, stand and walk less than two hours total combined, would need unscheduled breaks 50% of the workday, would require use of a cane with standing and walking, could rarely lift and carry any weight, could never crouch or climb ladders, could rarely stoop or climb stairs, and would be absent more than four times per month (Ex. 27F). Although Ms. Wegner is the claimant's longtime primary care provider, she is not an acceptable medical source capable of offering a medical opinion under 20 CFR 404.1502(a)(7) and 404.1513(a). Moreover, Ms. Wegner did not provide support in the form of objective diagnostic or clinical findings to support her extreme limitations assessed, and the overall record is largely inconsistent with these restrictions.

R. 52.

*Comm'r of Soc. Sec.*, No. CV 18-12813 (SRC), 2019 WL 3812450, at *3 (D.N.J. Aug. 14, 2019) ("Here, the ALJ explained that Dr. Kempf's assessment was not consistent with the record evidence as a whole.[] In the absence of an explanation of the purported conflicts in the evidence, this statement cannot be meaningfully reviewed."); *Zigarelli v. Comm'r, Soc. Sec. Admin.*, No. CV 18-12690, 2019 WL 3459080, at *4 (D.N.J. July 30, 2019) (remanding action where the ALJ found the physician's opinion "vague and currently inconsistent with the evidence of record" but where the ALJ "does not explain in what way he found the limitation to be vague, nor does he cite to specific contradictory evidence in the record.[] Thus, the Court cannot determine whether the ALJ properly discounted Dr. Ranawat's opinion in this regard"); *Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J. Dec. 3, 2018) ("Again, however, the ALJ does not indicate what specific portions [of a medical opinion] are inconsistent [with the record]. These vague citations to the record are insufficient to 'provide a clear and satisfactory explication' of the weight given to Dr. Allegra's opinion in order to assist a reviewing court in 'perform[ing] its statutory function of judicial review.'") (citing *Cotter*, 642 F.2d at 704−05).

In addition, it is unclear how the ALJ "incorporated" Dr. Patel's opined limitations to "sedentary work, postural limitations, and limitation to simple, routine work" into the RFC. R. 52. For example, although Dr. Patel opined that Plaintiff's unscheduled breaks must last fifteen minutes, R. 1308, the ALJ concluded that such breaks need last only one to two minutes, R. 47. Moreover, the ALJ's postural limitations of occasional stooping, crouching, and climbing stairs, *id*. (which, incidentally, were also the limitations opined by the state agency reviewing physicians, notwithstanding the fact that the ALJ found that the record supported greater limitations, R. 52, 118, 133), conflict with Dr. Patel's opinion that Plaintiff should never perform

such activities, R. 1309. Finally, Dr. Patel opined that Plaintiff could not engage in even low stress work, R. 1307, yet the ALJ found that Plaintiff "is able to adapt to changes in routine work settings[,]" R. 47; *cf. Havens v. Colvin*, No. 3:13-CV-00600, 2014 WL 4659957, at *12 (M.D. Pa. Sept. 17, 2014) ("The ALJ's residual functional capacity determination limited Havens to simple, routine tasks and 'low stress.'. . . The ALJ limited Havens to only occasional decision-making and *only occasional changes in the work setting*. . . . These limitations not only accounted for any difficulty that Havens may have with responding to pressures, but they also had the effect of limiting the instructions that Havens would receive from her supervisor(s).") (emphasis added) (citations omitted).

It is unclear to what extent the ALJ's error in evaluating Dr. Patel's opinions infected the ALJ's RFC determination. R. 47–53. Thus, the Court cannot meaningfully review the ALJ's RFC finding or determine whether substantial evidence supports that finding at step four of the sequential evaluation process. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:19-CV-20122, 2020 WL 7022746, at *6 (D.N.J. Nov. 30, 2020) ("The ALJ's reliance on this misconception, along with other unsupported mischaracterizations of Plaintiff's physical abilities . . . permeates the ALJ's decision. As stated above, these errors cannot be separated from the ALJ's analysis of other record evidence such that the Court may determine whether substantial evidence supports the ALJ's RFC analysis."). The Court therefore concludes that remand of the matter for further consideration is warranted. This is true, moreover, even if, upon further examination of these issues, the ALJ again assigns only "some weight" to Dr. Patel's opinions and ultimately concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of*

*Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed, and the matter must be remanded to the Commissioner for further consideration of these issues.[6]

## VI.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[6] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Patel's opinions and the RFC determination, the Court does not consider those claims. However, on remand the Court encourages the ALJ to also clarify his findings at step five of the sequential evaluation. Although not raised by either party, the Court notes that the jobs identified by the ALJ in his decision–document preparer, order clerk, and charge account clerk, R. 54–appear to be different than those identified by the vocational expert when responding to the ALJ's fifth hypothetical incorporating social limitations, some of which were ultimately included in the RFC. R. 104–05 (testifying that the limitation of only occasional interaction with the public, co-workers, and supervisors would eliminate the jobs of order clerk and charge account clerk, but that document preparer would still be available, as would the jobs of bench hand and final assembler). Similarly, the ALJ may want to clarify on remand any social limitations related to interaction with the public: the current RFC contains no such limitation, R. 47, but, as previously noted, the fifth hypothetical posed to the vocational expert provided for only "occasional interaction with the public." R. 104. There is no hypothetical posed to the vocational expert that includes as the only social limitation "occasional interaction with co-workers and supervisors." *See* R. 100–07.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  February 3, 2022                                  *s/Norah McCann King*
                                                         NORAH McCANN KING
                                                         UNITED STATES MAGISTRATE JUDGE